**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA D., Plaintiff | : | CIVIL ACTION |
| v. | : | |
| FRANK BISIGNANO,[1] Commissioner of the Social Security Administration, Defendant. | : | NO. 24-1927 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE — August 31, 2026

Lisa D. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, Plaintiff's request for review is denied.

## I. PROCEDURAL HISTORY[2]

On July 20, 2021, Plaintiff applied for DIB, alleging that her disability commenced on January 30, 2021. R. 18. The claim was denied initially and upon reconsideration; therefore, Plaintiff requested a hearing. *Id.* On January 30, 2023, Plaintiff appeared for a telephonic hearing, before Gwendolyn M. Hoover, Administrative Law Judge ("the ALJ"). *Id.* Plaintiff, represented

---

[1] Frank Bisignano became Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted as Defendant in this suit and, pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.

[2] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of her Request for Review ("Pl. Br."), the Brief of Defendant ("Resp."), Plaintiff's Reply to Brief of Defendant ("Reply"), and the administrative record. ("R.").

by an attorney, and vocational expert Anthony Michael, ("the VE"), testified at the hearing. *Id.* On July 17, 2023, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued an unfavorable decision. R. 18-30. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on March 26, 2024, making the ALJ's decision the Commissioner's final determination. R. 1-3. Plaintiff presently seeks judicial review, and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).[4]

## II. FACTUAL BACKGROUND

### A. Personal History

Plaintiff, born on March 17, 1964, was 56 years old on her alleged disability onset date and 58 years old at the time of the administrative hearing. R. 28. She has a high school diploma. R. R. 43. She lives with her husband, mother-in-law, and teenage daughter. R. 42. Plaintiff also has an adult daughter. R. 54.

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

[4] The case was originally referred to the Honorable Elizabeth T. Hey. After Judge Hey retired from the bench, the case was referred to the undersigned.

B. Plaintiff's Testimony

At the January 30, 2023, hearing, Plaintiff testified that she last worked as a Certified Nurse's Assistant ("CNA") at Conestoga View Nursing Home, on January 21, 2021. R. 44. She testified that she stopped working after tearing the rotator cuff in her right shoulder while at work in 2020. R. 46. Although, she underwent surgery and participated in physical therapy, her shoulder never fully healed. R. 46-47. Plaintiff received a $49,000 workers' compensation settlement for this injury. R. 55. Prior to working at Conestoga View Nursing Home, Plaintiff had worked as a CNA at Willow Valley Communities. R. 44-45. In 2008 and 2009, she worked as a receptionist at Hajoca, where she answered phones, submitted warranty reimbursement requests, and occasionally lifted more than 10 pounds. R. 45. Plaintiff further stated that she injured her left shoulder while helping her mother-in-law move furniture. R. 55.

Daily, Plaintiff experiences pain, weakness and discomfort. R. 47. She rates her pain as three or four out of ten. R. 50-51. She can't sleep when lying on her right shoulder. R. 47. She cannot raise her right arm above her head without pain. R. 48. Reaching with her right arm in any direction induces pain. R. 48. Plaintiff limits lifting with her right hand to small pots and pans that weigh only "a couple of pounds." *Id.* Plaintiff is left-hand dominant. *Id.* Her left arm has greater range of motion than her right arm; she can raise it slightly above her head, although she had begun experiencing pain in her left shoulder before the hearing. R. 48, 52.

Plaintiff has good days and bad days. R. 52. On a good day, which occurs approximately once per week, she can do housework. *Id.* On a bad day, which also occurs approximately once per week, she stays in bed and sleeps, except to eat and use the bathroom R. 52-53. Although not prescribed, she uses a cane at least once per week when she has difficulty walking. R. 49. She remains in bed at least once per week. *Id.* She cannot walk an entire city block without stopping

because of pain. R. 51. She can stand for 30 to 45 minutes, approximately the amount of time it takes her to shop for groceries and checkout. *Id.* She can sit for no longer than 30 minutes at a time. R. 52.

Plaintiff also experiences migraines three to four times per month, for which she was prescribed medication. R. 49. The medication makes her drowsy, though she feels better the following day. *Id.* Plaintiff also suffered an annular tear, which causes difficulty sitting or walking for extended periods. R. 50. In 2002, she fell and fractured the middle of her back, resulting in osteoporosis and arthritis. *Id.* She has pain in her lower back and receives hip injections. *Id.* Her hips swell; she sometimes feels as though her right hip has slipped out of its socket. *Id.* Plaintiff testified that she was also diagnosed with fibromyalgia. *Id.* She has difficulty with her short-term and part of her long-term memory. *Id.* She struggles to focus and stay on task. *Id.* Plaintiff is currently taking medication for lupus, which causes hair loss and memory loss as side effects. R. 51.

Plaintiff's adjustable bed helps her sleep more comfortably. R. 53. She has no difficulty attending to her personal hygiene needs, including bathing, washing her face, brushing her teeth, combing her hair, using the bathroom, and dressing herself. *Id.* She spends time only with her husband, daughters, and mother-in-law. *Id.* Plaintiff uses her cell phone to text her older daughter and her husband, as well as to browse Facebook yard sale pages. R. 54. She cooks, helps wash dishes, and shops for groceries independently, or with her daughter and mother-in-law if she needs assistance lifting heavy items. *Id.* Plaintiff sometimes watches television, reads a little, occasionally crochets, and performs very little yard work. R. 54-55.

C. Vocational Testimony

The VE classified Plaintiff's past jobs as certified nursing assistant ("CNA"), semiskilled,[5] generally performed as medium[6] but actually performed as heavy;[7] receptionist, sedentary[8] and semiskilled; and data entry clerk, sedentary and semiskilled. R. 57. The VE testified that there are other sedentary, semiskilled positions requiring skills like those required for Plaintiff's receptionist job, particularly typing on a keyboard. R. 57-58. Those positions are clerk typist, 120,000 positions in the national economy, and order clerk, 80,000 positions in the national economy. R. 58. The VE opined that the clerk typist position would not require significant adjustment, though the order clerk position would. *Id.*

The ALJ asked the VE to consider a person having Plaintiff's age, education and work experience who is limited to light work, is left-hand dominant, and who can: occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, crouch, kneel, and crawl; frequently reach with the right upper extremity in all directions; never tolerate exposure to unprotected heights; and never tolerate even moderate exposure to workplace hazards such as unprotected moving mechanical parts. R. 59. The VE opined that the hypothetical individual would not be able to perform Plaintiff's past work as a CNA, though they would be able to perform Plaintiff's prior position as a clerk typist. *Id.*

The ALJ then asked the VE to consider the same hypothetical individual who would need

[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b).
[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).
[7] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).
[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

to: tolerate no more than moderate levels of noise; avoid working outdoors in bright sunshine or with bright or flickering lights, such as those present in welding or metal cutting; avoid irritants such as fumes, odors, dust, gases, and chemicals; and avoid poorly ventilated areas. R. 59-60. The VE testified that the hypothetical individual could perform the clerk typist position. R. 60.

Next, Plaintiff's attorney asked the VE whether a hypothetical individual would be precluded from work if the individual could only occasionally lift and carry 10 pounds; could never reach overhead with the right upper extremity; could occasionally reach in all other directions with the right upper extremity; and could sit for five hours, stand for three hours, and walk for two hours during an eight-hour workday. R. 60. The VE testified that the individual would be unable to perform any of Plaintiff's past relevant work because sedentary work requires more than occasional use of the upper extremities and more than five hours of sitting, and because keyboarding requires frequent reaching in all directions. R. 61. The VE further testified that the standing and walking limitations were inconsistent with light work. *Id.* The VE also testified that an individual who was absent from work two or more days per month on a regular basis, or who was off task for 10% or more of the workday on a regular basis, would be precluded from competitive employment. R. 62. Lastly, the VE testified that the individual described in the ALJ's hypothetical would be unable to perform work if limited to simple, routine tasks. *Id.*

## III. THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2023.

2. [Plaintiff] has not engaged in substantial gainful activity since January 30, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: status post right rotator cuff tear/osteoarthritis of the right shoulder, degenerative changes in the lumbar spine, and osteoarthritis of the bilateral hips (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She is left-hand dominant and is limited to frequent reaching in all directions with the right upper extremity. The claimant cannot tolerate concentrated exposure to humidity, extreme cold, extreme heat, or vibration. She would not be able to tolerate even moderate exposure to workplace hazards such as unprotected heights and moving mechanical parts.

6. [Plaintiff] is capable of performing past relevant work as a composite job of receptionist, DOT#237.367-038, performed at the sedentary exertional level with a specific vocational preparation ("SVP") code of 4 and data entry clerk, DOT# 203.582-054, performed at the sedentary exertional level with an SVP code of 4. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from January 30, 2021, through the date of this decision (20 CFR 404.1520(f)).

R. 20, 22-23, 27-29.

## IV. DISCUSSION

A. Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v.*

*Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C. Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff was not disabled, because she could perform her past relevant work and other work existing in significant numbers in the national economy. R. 18-30. Plaintiff challenges the ALJ's decision, arguing that (1) under the new regulations, her prior work does not qualify as past relevant work, and (2) the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because it fails to account for her mild limitation in concentrating, persisting, or maintaining pace. Pl. Br. at 3-10. The Commissioner disputes Plaintiff's arguments. Resp. 3-11. This Court agrees with the Commissioner.

1. The ALJ Applied the Appropriate Definition of "Past Relevant Work"

First, Plaintiff argues that the ALJ's decision should be overturned because her positions as receptionist and data entry clerk do not qualify as "past relevant work" under the new regulations. Pl. Br. at 3-4. Plaintiff's argument fails.

Plaintiff worked as a receptionist and data entry clerk between 1987 and 2009, 14 years before the ALJ's July 17, 2023, decision. R. 28. She concedes that, at the time of the January 30,

2023, hearing and the ALJ's July 17, 2023, decision, the regulations defined "past relevant work" as work performed within the preceding 15 years. Pl. Br. at 3-4 (citing 42 U.S.C. § 404.1560; 68 Fed. Reg. 51,163 (Aug. 26, 2003), as amended at 77 Fed. Reg. 43,494 (July 25, 2012)). Nevertheless, Plaintiff argues that the court should apply the new definition of past relevant work, which considers only work performed within the preceding five years. 20 C.F.R. § 404.1565. This amended definition did not become effective until June 22, 2024, more than one year after the hearing and nearly one year after the ALJ issued her decision. 89 Fed. Reg. 48,138-01, 2024 WL 2831350, at *1. The court's role here is to review the ALJ's decision for compliance with the applicable regulations and to determine whether it is supported by substantial evidence. *See Branson v. Barnhart*, Civ. A. No. 01-1372, 2005 WL 3557836, *3 (E.D. Pa. Dec. 29, 2005) (holding that the Commissioner's regulations do not have retroactive effect without express congressional authorization); 42 U.S.C. § 405(g) ("[T]he court shall review only the question of conformity with [the] regulations and the validity of such regulations."). Thus, the ALJ did not err by applying the regulations that were in effect when she issued her decision.

2. <u>The ALJ's RFC Assessment is Supported by Substantial Evidence</u>

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because it does not include limitations reflecting three medical opinions that Plaintiff has mild limitations in concentrating, persisting, and maintaining pace. Pl. Br. at 6. Plaintiff's argument fails.

An RFC assessment reflects the most a claimant can do despite the limitations caused by her impairments. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). The RFC determination is reserved to the ALJ and is not itself a medical opinion. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In formulating the RFC, the ALJ must consider all

of a claimant's medically determinable impairments, including non-severe impairments identified at step two. 20 C.F.R. § 404.1545(a)(2). However, an ALJ is not required to incorporate every finding from every medical opinion into the RFC. *Hess*, 931 F.3d at 209. Rather, the ALJ need only provide a valid explanation when declining to include supported limitations, including mild mental limitations. *See id.*; *see also Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

Plaintiff alleged several mental limitations, including difficulty concentrating. R. 21. State agency psychological consultants Drs. Lelwellyn Antone Raymundo and Wadicar Fabian Nugent, at the initial and reconsideration levels, and consultative psychologist Dr. Kathleen Ledermann each opined that Plaintiff has mild limitations in concentrating, persisting, and maintaining pace. R. 69, 79, 411. At step two, the ALJ determined that Plaintiff's mental impairments were non-severe. R. 21. At step three, the ALJ considered the paragraph B criteria and found that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace, and adopted the opinions of Drs. Raymundo, Nugent, and Ledermann. R. 21-22. At step four, the ALJ, again, discussed those three opinions and found them generally persuasive. R. 25-27. Although the ALJ did not include a corresponding mental limitation in the RFC, the omission does not require remand.

The ALJ should have expressly addressed why she declined to include a limitation reflecting in the RFC Plaintiff's mild difficulties with concentration, persistence, and pace after finding the psychologists' opinions persuasive. *See Rutherford*, 399 F.3d at 554. Nevertheless, any error was harmless because the ALJ adequately explained why no functional mental limitations were warranted. The ALJ considered Plaintiff's allegation that she "has limitations in concentration generally" along with her activities of daily living and mental status exam notes, which describe her as alert, oriented and appropriately attentive. R. 21-22. The ALJ also explained that Plaintiff's severe and non-severe medically determinable mental impairments caused no more

than mild limitations in any functional area and "the evidence [did] not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities." R. 22. Accordingly, the ALJ's decision satisfies the requirements of *Ramirez*, and substantial evidence supports the RFC assessment. [9]

Additionally, Plaintiff relies heavily on *Perez-Vega*, which expressly recognizes that district courts within the Third Circuit have not adopted a consistent rule as to whether an ALJ must include in the RFC, language reflecting mild limitations caused by non-severe mental impairments. *Perez-Vega*, Civ. A. No. 22-3994, 2023 WL 3620747, at *4 (E.D. Pa. May 24, 2023). However, *Perez-Vega* is distinguishable, because therein the court grappled with the issue of whether the ALJ properly determined that Plaintiff could return to her prior *skilled* work. *Id.* at *6-7. Indeed, the *Perez-Vega* court remanded the case because (1) the ALJ failed to explain in the RFC assessment the significance of a medical opinion that Plaintiff had mild mental limitations, and (2) the medical opinions the ALJ relied on did not address Plaintiff's ability to return to her past skilled work. *Id.* at *6. Those errors are not present here.

As previously explained, the ALJ considered the medical opinions of all three psychologists, including their opinions that Plaintiff had mild limitations in concentrating, persisting, and maintaining pace. R. 21-22, 25-27. Although the ALJ found those opinions generally persuasive, she explained that the evidence did not indicate that Plaintiff's mental impairments had more than a minimal impact on her ability to perform basic work activities. R. 21-22, 25-27. The ALJ further explained that, after considering the entire record, including the objective medical evidence, opinion evidence, and Plaintiff's subjective statements, the RFC did not warrant any explicit mental restrictions. R. 27 ("After considering the record, including the

[9] In *Hess*, the Third Circuit also held that an ALJ may omit moderate mental limitations from the RFC if there is a valid explanation. *Hess*, 931 F.3d at 209.

objective medical evidence, expert opinions, and subjective statements, I find that the claimant is limited to the degree found above.”). Finally, both Drs. Raymundo and Nugent opined that Plaintiff’s RFC limitations do not render her incapable of performing her past relevant work. R. 73-74, 84-85. Accordingly, although *Perez-Vega* is not controlling authority, the ALJ’s decision here does not run afoul of that court's reasoning.

An implementing order and order of judgment follow.